James Wesley PHILEN, Appellant,

v.

E. E. SORENSEN, Independent Executor of the Estate of Virginia Clark Carroll Thornton Philen, Deceased, et al., Appellees.

No. 1385.

Court of Civil Appeals of Texas, Tyler.

Dec. 18, 1980.

Rehearing Denied Jan. 8, 1981.

Bill D. Rosenstein and Duane G. Stephens, Stephens, Corn & Rosenstein, Tyler, for appellant.

William R. Pemberton, Sallas, Meriwether & Pemberton, Crockett, for appellees.

SUMMERS, Chief Justice.

Appellee, E. E. Sorensen, independent executor of the estate of Virginia Clark Carroll Thornton Philen, brought suit against the decedent's husband, James Wesley Philen, alleging that the couple's homestead was Mrs. Philen's separate property and that by wrongfully and intentionally shooting and killing his wife, the appellant, Mr. Philen, caused his homestead interest, if any, to be subject to a constructive trust with Mr. Philen as constructive trustee and the plaintiffs as the beneficial owners. Additionally, plaintiffs alleged that Mr. Philen had forfeited any homestead interest in the property by voluntarily abandoning the premises. They asked that a temporary injunction be granted enjoining Mr. Philen from interfering with their possession of the property and from using or disposing of the same without their permission. The district court, after a hearing, granted the temporary injunction from which Mr. Philen appeals.

We reverse and dissolve the injunction.

The sole issue before this court is whether the trial court abused its discretion in granting the temporary injunction. In order to determine the propriety of the writ, it is necessary to discuss the events surrounding this controversy as were developed at the hearing on the injunction.

On July 3, 1979, a shooting incident occurred which resulted in Mrs. Philen's death. Mr. Philen testified that two or three days following the incident, he removed himself from the house and took a room at the Motel of Tomorrow on Lake Palestine. He related that when he left the home, he took some clothing with him but left all of his winter clothing. Upon cross-examination, Mr. Philen testified as follows:

Q. And the time that you mentioned that you did move out, why did you—did you move out or did you leave as you left this morning to come to Court?

A. I left and took some clothes.

Q. Did you, or have you, since that house has been built have you ever moved from the home?

A. No, sir.

Q. You testified earlier that you moved into a motel. What did you mean by that?

A. I could not stay in that house after what happened.

Q. All right, did you go to a motel for a few days?

A. Three days, I believe.

Q. Three days in the motel?

A. Yes, sir.

Q. All right.

A. At the very most.

He thereafter remained away from the house choosing instead to abide with his brother.

When questioned by the attorney for Mrs. Philen's estate respecting what he did with his key when he left the house, he replied that he turned it over to his attorney to give to Mr. Sorensen (the executor) to do an inventory. He testified that he did so with the understanding that the key would be returned together with a copy of the inventory; he received neither. Such is the sum and substance of the testimony regarding possession of the home before this suit was filed on July 24, 1979.

Following filing of the suit, the executor himself testified that he had the locks on the house changed on July 30, 1979, thus preventing Mr. Philen from regaining entry. He was asked:

Q. All right, and upon changing the locks on July 30, 1979, did you take control of the house?

A. Yes, I did.

Q. All right, did you stay in it for sometime?

A. No, I did not.

Subsequently, Mr. Philen contacted a locksmith who assisted him in again taking physical possession of the home. He was still living in the home, much to the estate's consternation, at the time of the injunction hearing.

Since this is an appeal from an interlocutory order granting a temporary injunction, the merits of the case and the ultimate right of possession are beyond the ambit of our review. The scope of our appellate review is thus strictly limited to a determination of whether there has been a clear abuse of discretion by the trial court in granting the injunction. *Davis v. Huey,*

571 S.W.2d 859, 862 (Tex.1978); *Janus Films v. City of Fort Worth,* 153 Tex. 616, 358 S.W.2d 589 (1962).

The only valid purpose of a temporary injunction is to preserve the *status quo* pending final resolution of a dispute upon the merits of the case. The *status quo* to be preserved by a temporary injunction is the last, actual, peaceable, non-contested status of the parties to the controversy which preceded the pending suit. *Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549, 552–54 (1953); *Houston Funeral Home v. Boe,* 78 S.W.2d 1091, 1094 (Tex.Civ.App.—Galveston 1934, no writ); 31 Tex.Jur.2d, Injunctions § 40 (1962).

After carefully reviewing the record before us, we do not arrive at the same conclusion as did the trial court regarding the *status quo.* It is clear that before the executor filed suit against Mr. Philen, by the executor's own admission, Mr. Philen was still claiming right to the property. Mr. Philen testified that he left a large portion of his personal effects at the house. Prior to July 24, 1979, when suit was filed and this pending controversy arose, Mr. Philen's possession was the last peaceable, noncontested possession. The executor did not enter into possession of the home until July 30, 1979, when he changed the locks. That action was subsequent to the controversy. Hence, his possession cannot be said to be the last peaceable, non-contested status and consequently is not the proper state of affairs to be preserved.

■ Although no abuse of discretion should be found when the trial court bases its determination upon conflicting evidence, *Davis v. Huey, supra* at 862, that rule is not applicable to this case. The facts are clear and the testimony undisputed that prior to July 24th Mr. Philen was in exclusive possession. Therefore, the presumption which is often indulged in favor of the lower court's ruling cannot here be obliged. Instead, where it appears that a temporary injunction is based on an erroneous application of the law to the clear facts of the case, the injunction will be dissolved. *Dallas*

*General Drivers, Warehousemen & Helpers v. Wamix, Inc. of Dallas,* 156 Tex. 408, 295 S.W.2d 873 (1956); *General Telephone Co. of the Southwest v. City of Wellington,* 156 Tex. 238, 294 S.W.2d 385, 393 (1956); *S. S. S. Water Systems, Inc. v. The City of Granite Shoals,* 601 S.W.2d 191, 194 (Tex.Civ. App.—Austin 1980, no writ). It is an abuse of discretion for a trial court to ignore the undisputed facts and to enter a temporary injunction disturbing the *status quo* because a "... court is without authority to divest a party with property rights without a trial." *Perry v. Stringfellow,* 134 Tex. 328, 134 S.W.2d 1031, 1032 (1940); *Plant Process Equipment, Inc. v. Harris,* 579 S.W.2d 53, 55 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ).

Appellee contends that the action of the trial court in ordering Mr. Philen off the property was correct. He cites a number of cases, including *Houston Funeral Home v. Boe, supra,* for the proposition that where pending a controversy between claimants to property, possession is taken by one by forcible trespass or actual fraud or from the claimant holding and using the property, a mandatory injunction should issue requiring the one who has thus taken the property to restore it to the one from whose possession it was thus taken. These cases are distinguishable from the present suit. In this suit, Mr. Philen is more than a naked trespasser or adverse possessor. Those parties enjoined in cases cited by appellee claimed right of possession solely by virtue of force, fraud or threat.

■ This case is before us without findings of fact or conclusions of law and appellee accordingly maintains that the trial court judgment must be affirmed if it can be sustained on any reasonable theory authorized by law or supported by the evidence. However, this presumption does not apply where the evidence is undisputed or if evidence to support the judgment is not found in the record. 5 Tex.Jur.3d, *Appellate Review* § 630 (1980); *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.,* 565 S.W.2d 916, 918 (Tex.1978); *Warren Petroleum Corp. v. Martin,* 153 Tex. 465,

271 S.W.2d 410 (1954). As suggested by Mr. McDonald in 4 R. McDonald, Texas Civil Practice § 16.10 (rev. 1971):

> When specific findings of fact and conclusions of law have not been requested or filed, and also have not been stated in the judgment, but appellant brings forward a statement of facts, it is presumed upon appeal that the trial judge found every issuable fact proposition necessary to sustain the judgment, if such fact proposition is raised by the pleading (or by trial outside the pleadings by express or implied consent) and is supported by the evidence. The appellate court must affirm the judgment if it can be sustained 'on any reasonable theory supported by the evidence and authorized by law.' The appellant thus bears the burden of showing either that the undisputed facts negative one or more of the elements essential to support the judgment .... (Emphasis supplied.) *See also, Threet v. Texas Employers' Insurance Association,* 516 S.W.2d 276, 278 (Tex.Civ. App.—Tyler 1974, no writ).

We hold that appellant has met this burden. The statement of facts transcribed at the injunction hearing reveal the undisputed fact that Mr. Philen, who was more than a mere trespasser, was in peaceable possession of the premises pending the controversy. One of the essential elements to support the judgment, that the estate held the last peaceable non-controverted possession pending the controversy, is missing. The undisputed facts disclose that possession by the estate was not the *status quo* to be maintained.

Accordingly, since the trial court abused its discretion in actively changing rather than preserving the *status quo,* and misapplied the law to the facts of the case, the judgment of the district court is reversed, and the order granting the temporary injunction is dissolved.